**James Charles LEA, Appellant**
**(Petitioner below),**

v.

**Melody Ann LEA, Appellee**
**(Respondent below).**

No. 24S01–9711–CV–627.

Supreme Court of Indiana.

Feb. 27, 1998.

Jon R. Pactor, Indianapolis, Michael Douglass, Liberty, for Appellant.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

The Court of Appeals reversed a trial court order requiring a father to pay child support for his mentally retarded adult daughter. We granted transfer and vacated the opinion of the Court of Appeals. We now affirm the trial court.

### Background

James and Melody Lea, parents of Wesley and Tara, were divorced in 1980. Mother was awarded custody of the two children. From the time of the divorce, Father made child support payments in the amount of $60 per week. In 1996, Father filed a petition to modify the divorce decree and requested the court to determine that their two children, both over the age of 21, were emancipated.

Under our child support statute, a parent's child support obligation terminates when a child is emancipated or reaches age 21, except in certain circumstances. *See* Ind.Code § 31-16-6-6(a) (Supp.1997).[1] One of those circumstances—central to this case—is where the child is incapacitated. *See* Ind. Code § 31-16-6-6(a)(2).

The trial court found that one child, Wesley, was emancipated. As to the other child, Tara, the trial court determined that she was incapacitated due to mental retardation and anxiety attacks. There is evidence of record that Tara was born in 1971, that her I.Q. has been measured as 62 and 64, and that Mother is required to manage Tara's money, manage many of her personal care needs, and provide her with transportation.

Father did not and does not contest the trial court's finding that Tara is incapacitat-

ed. However, Father does contend that because Tara earns approximately $144 per week working in a fast food restaurant, he should be relieved of any child support obligation. The trial court declined to relieve Father of any child support obligation in this regard. Instead, the trial court applied this court's Child Support Guidelines, calculating the weekly support obligation for the child based on the income of Mother, Father, and Tara. The trial court then apportioned the support based upon the relative amount earned by Mother, Father, and Tara, and determined that Father should pay 60% of the weekly obligation or $75.00 per week.

The Court of Appeals reversed. *Lea v. Lea,* 681 N.E.2d 1154 (Ind.Ct.App.1997). Relying on a dissenting opinion in another Court of Appeals case, the Court of Appeals rejected the methodology used by the trial court here. *Id.* at 1156 (citing *In re Marriage of Tearman,* 617 N.E.2d 974, 978–79 (Ind.Ct.App.1993) (Robertson, J., dissenting)). Instead, the Court of Appeals prescribed an alternate methodology "to be employed in computing an adult child support order under the present circumstances." *Id.* at 1157. Applying this methodology, the Court of Appeals found that Father had no child support obligation. *Id.*

### Discussion

#### I

Section 6(a) of our statute governing child support orders provides:

The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:

(1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order

---

1. The principal statute at issue in this case governs the termination of child support obligations when a child reaches age 21. Effective July 1, 1997, that statute was re-codified at Ind.Code § 31-16-6-6(a). From July 1, 1996, through June 30, 1997, it was codified at Ind.Code § 31-1-11.5-12(e). Prior to July 1, 1996, it was codified at Ind.Code § 31-1-11.5-12(d). There are

no differences in language among these versions; only the numbering and subsection lettering differ. For simplicity, Ind.Code § 31-16-6-6(a) will be the code section cited throughout this opinion, even though earlier versions of the statute were in effect at the time of various events or cases discussed.

for educational needs may continue in effect until further order of the court.

(2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.

(3) The child: (A) is at least eighteen (18) years of age; (B) has not attended a secondary or post-secondary school for the prior four (4) months and is not enrolled in a secondary or postsecondary school; and (C) is or is capable of supporting himself through employment. In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting himself or capable of only partially supporting himself, the court may order that support be modified instead of terminated.

Ind.Code § 31–16–6–6(a).

The preface to this section sets forth the general rule that a child support obligation terminates when the child reaches the age of 21, subject to the conditions set forth in the three following subdivisions. Subdivision (1) provides that the obligation (except for certain educational needs) may terminate before the child's 21st birthday if the child is emancipated. Subdivision (2) provides that the obligation may continue beyond the child's 21st birthday if the child is incapacitated. And Subdivision (3) provides that the obligation may terminate before the child's 21st birthday if the child is at least 18 and not in school and the child is or is capable of supporting himself or herself through employment.

■ Clearly subdivision (2) applies in this case. The trial court made an unchallenged finding that Tara is "incapacitated" within the meaning of the statute. As such, Father's and Mother's duties to support her "continue[ ] during the incapacity or until further order of the court." Ind.Code § 31–16–6–6(a)(2); *Free v. Free,* 581 N.E.2d 996, 998 (Ind.Ct.App.1991).

Father points us to the language in subdivision (3) to support his contention that he should be relieved of his support obligation. His argument appears to be that since "child support terminates upon the court's finding that the conditions" set forth in subdivision (3) exist and that those conditions do exist in Tara's case (she is at least age 18 and not in school and is or is capable of supporting herself through employment), the trial court erred in not terminating support.

We reject this argument for several reasons. First, the trial court did not find that the conditions prescribed in subdivision (3) existed; instead, it found that the condition prescribed in subdivision (2) existed—incapacity. As such, the legislature has prescribed that "child support continues during the incapacity or until further order of the court." *See Free,* 581 N.E.2d at 998 (duty to pay child support continued because child incapacitated under subdivision (2), regardless of applicability of subdivision (3)).

Second, to the extent that Father claims that the trial court erred in not finding the conditions prescribed in subdivision (3) to exist, our review of the record convinces us that the trial court might well have concluded that there was not sufficient evidence to establish that Tara was or was capable of fully supporting herself through employment. Under subdivision (3), Father would have had the burden of proving that Tara could sustain herself completely through employment.[2] *In re Marriage of Tearman,* 617 N.E.2d at 977; *Brancheau v. Weddle,* 555 N.E.2d 1315, 1318 (Ind.Ct.App.1990). Tara earned only approximately $144 per week and was eligible for Medicaid. In addition, as discussed under *Background, supra,* Tara is mentally retarded and requires assistance in managing her money, managing many of her personal care needs, and providing her with transportation.

We agree with the trial court that, by operation of Ind.Code § 31–16–6–6(a)(2), Father and Mother have a continuing duty to support Tara.

---

**2.** A child must be capable of *fully* supporting himself or herself through employment for child support to be *required* to be terminated under subdivision (3). This is made clear by the fact that the legislature provided that the trial court has authority to modify (rather than terminate) child support where the child is only partially supporting or capable of only partially supporting himself or herself. Ind.Code § 31–16–6–6(a)(3).

## II

While Father and Mother have a continuing duty to support Tara, Father challenges the amount awarded. He contends—and the Court of Appeals agreed—that given the amount of Tara's income, his support obligation should have been reduced to zero.

■ We place a "strong emphasis on trial court discretion in determining child support obligations" and regularly acknowledge "the principle that child support modifications will not be set aside unless they are clearly erroneous." *Stultz v. Stultz,* 659 N.E.2d 125, 128 (Ind.1995) (citing *Kinsey v. Kinsey,* 640 N.E.2d 42, 44 (Ind.1994)). *See In re Marriage of Richardson,* 622 N.E.2d 178, 179 (Ind.1993); *Humphrey v. Woods,* 583 N.E.2d 133, 134 (Ind.1991). The Indiana Child Support Guidelines aid in the determination of the amount of child support that should be awarded and provide a measure for calculating each parent's share of the child support. There is a "rebuttable presumption that the amount of the award which would result from the application of the Indiana Child Support Guidelines is the correct amount of child support to be awarded." Ind. Child Support Rule 2 (1997).[3]

As discussed under *Background, supra,* the trial court employed the following methodology in computing Father's child support obligation here. First, the trial court applied this court's Child Support Guidelines, calculating the weekly support obligation for the child based on the income of Mother, Father, and Tara. *See generally* Child Supp.G. 3(A)–(E). The trial court then apportioned the support based upon the relative amount earned by Mother, Father, and Tara, and determined that Father should pay 60% of

the weekly obligation or $75.00 per week. *See* Child Supp.G. 3(F).

We acknowledge that the Child Support Guidelines do not provide specific guidance for calculating support obligations with respect to an incapacitated adult child with income.[4] However, an analogy is available in Child Supp.G. 3(E)(3) and the Commentary thereto. Child Supp.G. 3(E)(3) concerns the determination of child support where a child incurs reasonable and necessary expenses for attending private or special schools, attending college, or for particular educational needs. The Guideline provides that if the trial court decides to add any such "extraordinary education expense" to the basic child support obligation, the court should consider income and assistance available to the children such as scholarships, grants, student loans, and summer and school year employment. Child Supp.G. 3(E)(3). Alternatively, the trial court is authorized to order such expense to be paid separately from child support. The Guideline provides,

> "When considering whether or not to order the payment of postsecondary education, the court shall consider what would have happened, or how such expenses would have been handled within a particular family, but for the dissolution. Where the court cannot make such a determination, the court should consider post-secondary education to be a group effort based on the ability of parents and child to contribute. *When the court chooses to apportion the expenses between the parties and the child, the division of expenses is left to the sound discretion of the trial court, using as a guide the statutory factors for support."*

*Id.* (emphasis supplied).[5]

While the authority for a court to award post-secondary education expenses is derived

3. References to Ind. Child Support Guidelines and Rules refer to the version published in the 1997 Edition of the Indiana Rules of Court.

4. We likely will include such guidance in the next revision of the Guidelines.

5. The emphasis on trial court discretion is also a recurring theme in the commentary to this Guideline. *See, e.g.:* (1) "[J]udges are free to exercise discretion in determining when to award post-secondary expenses and in what amounts." (2) "Clearly it is within the purview of the court to determine what expenses will be

provided for in a court order, who will pay what portion of each expense, what level of achievement is expected of the student to remain eligible for parental assistance and any other matters that are germane to the issue of post-secondary expense. No particular method of calculating these expenses is endorsed by the Guidelines. Rather a number of factors may be considered...." (3) "[w]hile some would like to see a decision to award post-secondary education expenses reduced to a formula, the diversity of fact situations courts must consider make it all but impossible to do justice with a formula." Child Supp.G. 3(E)(3), comm. 3.

from statute and not from the Guidelines, the foregoing discussion is useful in the present context because it both acknowledges the propriety of considering a child's earnings in making a support calculation and emphasizes the broad discretion the trial court enjoys in such matters.

■ Here the trial court considered the support to which Tara was entitled under the Guidelines, taking into account the earnings of Mother, Father, and Tara. *See generally* Child Supp.G. 3(A)–(E). The court then determined Father's contribution based on his earnings relative to those of Mother and Tara. *See* Child Supp.G. 3(F). This approach seems to us to be entirely consistent with the Guidelines in general and the analogous provisions discussing student earnings in particular. We find no abuse of discretion.

■ We feel constrained to address the approach the Court of Appeals took in interpreting the Child Support Guidelines here. That court mandated that in "computing an adult child support order under the present circumstances," a trial court must follow a methodology which reduces the total child support obligation by the amount the child contributes to his or her own support. Such an appellate court mandate impermissibly impinges upon the discretion that trial courts enjoy in determining support obligations. *Stultz,* 659 N.E.2d at 128; *Kinsey,* 640 N.E.2d at 44; *In re Marriage of Richardson,* 622 N.E.2d at 179; *Humphrey,* 583 N.E.2d at 134. While such an approach might well be appropriate in some circumstances, we reject the notion that it is mandated either by statute or the Guidelines.

### III

Father contends that should the Court not abate his child support obligation, then we should find that the trial court erred by failing to include all of Mother's financial resources, *to wit,* the approximate rental value of the home in which Mother and Tara reside, which is owned by Mother's current husband. Because the Court of Appeals abated Father's child support, it did not address this issue. Mother contends that this issue is not available for litigation on appeal because Father did not present evidence to the trial court regarding the rental value of the home. Father's appellate counsel contends that such evidence was presented in the trial "attorneys' admissions or stipulations." However, Father's counsel gives us no citation to the record as to where we might find such admissions and stipulations. *See* Ind. Appellate Rule 8.3(A)(7) (argument shall contain citations to the parts of the record relied upon). We have independently reviewed the record and believe we have located what counsel refers to as the "admissions and stipulations." (R. at 109–11.) During the hearing, Mother's counsel presented evidence regarding the rental value of the home when responding to a question concerning whether the living expenses submitted were those of the household or of Tara. This information was not presented in the context of calculating Mother's gross weekly income. In fact, on several occasions the court asked the parties whether there was any other information which should be considered in calculating the gross weekly income and Father never contended that the rental value of the home should be included in Mother's gross weekly income. (R. at 105; 113; 118–19.) An issue not raised at trial cannot be advanced for the first time on appeal. *See Joe v. Lebow,* 670 N.E.2d 9, 21 n. 11 (Ind.Ct.App.1996); *Elbert v. Elbert,* 579 N.E.2d 102, 107 n. 2 (Ind.Ct.App.1991); *Green v. Green,* 447 N.E.2d 605, 610 (Ind.Ct.App.1983).

### Conclusion

Having previously granted transfer and vacated the opinion of the Court of Appeals, we now affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.