David E. SCHACHT, Appellant–
Respondent,

v.

Pamela K. SCHACHT, Appellee–
Petitioner.

No. 73A01–0802–CV–86.

Court of Appeals of Indiana.

Sept. 9, 2008.

Kelley Yeager Baldwin, Yeager Good & Baldwin, Shelbyville, IN, Attorney for Appellant.

Peter G. DePrez, H. Curtis Johnson, Brown DePrez & Johnson, Shelbyville, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

David E. Schacht ("Father") appeals the trial court's grant of a petition to modify child support and educational expenses filed by Pamela K. Walker ("Mother"). Father raises five issues, which we reorder and restate as:

I. Whether the trial court erred by modifying Father's obligation to pay his daughter's educational expenses;

II. Whether the trial court erred in defining and determining "other educational expenses;"

III. Whether the trial court erred when it applied scholarships, grants, and awards to the daughter's one-third share of educational expenses;

IV. Whether the trial court erred by denying Father's request to terminate his child support obligation retroactively but granting a retroactive modification of his educational expense obligation; and

V. Whether the trial court erred by ordering Father to pay a portion of Mother's attorney fees.

We affirm in part and reverse in part.

The relevant facts follow. Father and Mother had one daughter, D.S., born on January 10, 1987. Father and Mother divorced in 1989, and provisions were made for custody and support of D.S. In 2005, the trial court approved an agreed entry modifying Father's child support obligation to $40.00 per week. Father and Mother also agreed that they would "each pay one-third (1/3) of college expenses for [D.S.] after payment of scholarship funds." Appellant's Appendix at 16. Following the 2005 modification, the parties figured the cost of D.S.'s college education at the University of Indianapolis, subtracted her scholarships and grants, and Mother, Father, and D.S. each paid one-third of the remaining expenses.

In July 2007, Mother filed a petition to modify child support and educational expenses. Specifically, Mother requested that Father pay more of the educational expenses, that the educational expenses include expenses necessary to meet D.S.'s financial needs, that Father be required to maintain D.S.'s medical insurance as long as the benefits were available, and that the amount of child support be revised.

At the hearing on Mother's petition, Mother testified that her current husband had been diagnosed with lung cancer in January 2007 and with a brain tumor in April 2007. Mother testified that her husband was unable to work and had exhausted his short-term disability benefits in June 2007. They had received $3,000.00 from a charity ride and $17,000.00 in benefits from a cancer policy, but Mother estimated that the funds would be exhausted in early 2008. Because her husband was not working, Mother was paying an extra $200 per month to maintain their medical insurance policies. Mother and her husband had also incurred over $3,300 in uninsured medical expenses for husband's treatments. Mother was also concerned that, when D.S. turned twenty-one in January 2008, the $40.00 per week in child support would cease and that Father would no longer provide D.S.'s health insurance.

The trial court entered findings of fact and conclusions of law granting Mother's petition. Specifically, the trial court found that "[a]pplying the Indiana Child Support Guidelines to the parties' incomes results in [Father] paying 72% of the educational expenses, an amount that differs by more than 20% from the existing order of one-third." Appellant's Appendix at 6. Further, the trial court found "a change of circumstances so substantial and continuing that the terms of the 2005 modification are unreasonable." *Id.* In particular, the trial court found substantial changes because D.S. was turning twenty-one years old on January 10, 2008, and in that because Mother "has incurred a significant loss of family income due to the illness of her husband and has had to assume additional expenses, [Mother's] financial ability to pay a one-third share of education expenses has changed accordingly." *Id.* at 7.

The trial court then concluded that Father's child support obligation would terminate on January 10, 2008, D.S.'s twenty-first birthday. Additionally, the trial court also defined "other educational expenses" as "transportation, car insurance, clothing and incidental expenses" and determined that $3,600.00 was "a reasonable amount to cover these expenses annually." *Id.* at 8. The trial court ordered that, retroactive to July 27, 2007, D.S.'s scholarships, grants, and awards be credited against D.S.'s one-third obligation and that Mother pay 28% and Father pay 72% of the balance of the educational expenses. Finally, the trial court ordered Father to maintain health insurance on D.S. as long as she remained eligible and ordered Father to pay $750.00 of Mother's attorney fees.

I.

The first issue is whether the trial court erred by modifying Father's obligation to pay D.S.'s educational expenses. "We place a 'strong emphasis on trial court discretion in determining child support obligations' and regularly acknowledge 'the principle that child support modifications will not be set aside unless they are clearly erroneous.'" *Lea v. Lea,* 691 N.E.2d 1214, 1217 (Ind.1998) (quoting *Stultz v. Stultz,* 659 N.E.2d 125, 128 (Ind.1995)). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies

on an incorrect legal standard. *Menard, Inc. v. Dage–MTI, Inc.,* 726 N.E.2d 1206, 1210 (Ind.2000), *reh'g denied.* We give due regard to the trial court's ability to assess the credibility of witnesses. Id. While we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon,* 711 N.E.2d 1265, 1268 (Ind. 1999).

■ The modification of a child support order is governed by Ind.Code § 31–16–8–1, which provides:

a) Provisions of an order with respect to child support or an order for maintenance (ordered under IC 31–16–7–1 or IC 31–1–11.5–9(c) before their repeal) may be modified or revoked.

b) Except as provided in section 2 of this chapter, modification may be made only:

1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Provisions for the payment of educational expenses are also modifiable because educational expenses are in the nature of child support. *See Martin v. Martin,* 495 N.E.2d 523, 525 (Ind.1986) ("Because Ind.

Code § 31–1–11.5–17 [now Ind.Code § 31–16–8–1] expressly permits modification of 'an order with respect to child support,' we hold that educational support orders not only continue following emancipation and age 21, but also are subject to further modification.").

Father argues that Mother was required to show "changed circumstances so substantial and continuing as to make the terms unreasonable" under Ind.Code § 31–16–8–1(b)(1) rather than a twenty percent deviation under Ind.Code § 31–16–8–1(b)(2). Father relies upon *Borum v. Owens,* 852 N.E.2d 966, 969 n. 4 (Ind.Ct. App.2006), where this court held that the twenty percent deviation was "not available to [the father] as a basis for modification" because "the child support guidelines do not contain fixed calculations for the payment of college expenses from which a trial court's order could deviate by 20% or more." Mother contends that the footnote in *Borum* is dicta and that it was possible in this case to calculate whether a twenty percent change had occurred. We need not address whether the twenty percent deviation is applicable here because we conclude that, regardless, Mother demonstrated "changed circumstances so substantial and continuing as to make the terms unreasonable" under Ind.Code § 31–16–8–1(b)(1).

The trial court found substantial changes because D.S. was turning twenty-one years old on January 10, 2008, and in that because Mother "has incurred a significant loss of family income due to the illness of her husband and has had to assume additional expenses, [Mother's] financial ability to pay a one-third share of education expenses has changed accordingly." Appellant's Appendix at 7. While it is unclear how D.S. turning twenty-one could be considered a substantial change, we conclude that the trial court properly

found Mother's circumstances resulted in a substantial change.

In general, the income of the parties and not the income of the spouses of the parties is considered in determining Weekly Gross Income for purposes of calculating child support. *See* Ind. Child Support Guideline 3. However, in determining post-secondary educational expenses, a trial court must consider, in part, "the incomes and *overall financial condition* of the parents." Ind. Child Support Guideline 6, Commentary (emphasis added).

Here, Mother presented evidence that her current husband was earning approximately $2,500.00 per month when he was working. In 2005, Mother was earning $38,264.00 per year, and Father was earning $98,459.00 per year. Although we have held that "[i]f the trial court determines that an order for college expenses is appropriate, the parents' contributions shall be roughly proportional to their respective incomes," *Borum*, 852 N.E.2d at 969, Father and Mother agreed in 2005 that they would "each pay one-third (1/3) of college expenses for [D.S.] after payment of scholarship funds." Appellant's Appendix at 16. Following the 2005 modification, the parties figured the cost of D.S.'s college education, subtracted her scholarships and grants, and Mother, Father, and D.S. each paid one-third of the remaining expenses.

Since the 2005 modification, Mother's husband has been diagnosed with lung cancer in January 2007 and with a brain tumor in April 2007. Mother testified that her husband was unable to work and had exhausted his short-term disability bene-

fits in June 2007.[1] They received $3,000.00 from a charity ride and $17,000.00 in benefits from a cancer policy, but Mother estimated that the funds would be exhausted in early 2008. Because her husband was not working, Mother was paying an extra $200 per month to maintain their medical insurance policies. Mother and her husband had also incurred over $3,300 in uninsured medical expenses for husband's treatments. Given the change in Mother's overall financial condition since the 2005 modification agreement, we conclude that Mother demonstrated "changed circumstances so substantial and continuing as to make the terms unreasonable." Ind.Code § 31–16–8–1(b)(1). The trial court's grant of Mother's petition to modify was not clearly erroneous.

## II.

The next issue is whether the trial court erred in defining and determining D.S.'s "other educational expenses." The trial court here apportioned D.S.'s educational expenses between the parties and defined "educational expenses" as tuition, books, lab fees, supplies, student activity fees, room and board, and other educational expenses. Appellant's Appendix at 7–8. The trial court then defined "other educational expenses" to include "transportation, car insurance, clothing and incidental expenses" and determined that "$3,600.00 [was] a reasonable amount to cover these expenses annually." *Id.* at 8.

▮ Father argues both that the trial court erred in defining "other educational expenses" and that the trial court erred by determining those expenses to be

---

1. Father argues that evidence of Mother's current husband's financial circumstances and illness was not relevant and that the trial court abused its discretion by admitting the evidence. As noted above, in determining post-secondary educational expenses, a trial court must consider, in part, "the incomes and *overall financial condition* of the parents." Ind. Child Support Guideline 6, Commentary (emphasis added). Consequently, the evidence was relevant, and the trial court did not abuse its discretion.

$3,600.00. We first note that the commentary to the Child Support Guidelines provides that "[i]t is discretionary with the court to award post-secondary educational expenses and in what amount." Ind. Child Support Guideline 6, Commentary. The Commentary also provides that "[a] determination of what constitutes educational expenses will be necessary and will generally include tuition, books, lab fees, supplies, student activity fees and the like. Room and board will also be included when the student resides on campus or otherwise is not with the custodial parent." *Id.* Furthermore, the Post–Secondary Education Worksheet includes a provision for "other" educational costs. Ind. Child Support Post–Secondary Education Worksheet. The Commentary provides that "[t]he court may wish to consider in the category of 'Other' educational costs (Line B(5) of the Worksheet) such items as transportation, car insurance, clothing, entertainment and incidental expenses." Ind. Child Support Guideline 6, Commentary.

During the hearing, Mother estimated that D.S. had annual "other educational costs" of $5,258.00, which included expenses for D.S.'s car, car insurance, car maintenance, cell phone, musical instrument reeds, clothing, gasoline, and food, and testified that she had been paying those expenses. Each of these expenses reasonably fit within the Child Support Guidelines' definition of "other educational costs." *See, e.g., Snow v. Rincker,* 823 N.E.2d 1234, 1240 (Ind.Ct.App.2005) ("All of the other expenses of which Snow complains fit squarely within the definition of 'Other' education expenses that the trial court may consider. Even though the trial court was not required to consider these expenses, we cannot say that it was an abuse of discretion to do so."), *trans. denied.*

■ Father also argues that these "other educational expenses" constitute child support, which must end when D.S. turned twenty-one. In support of this argument, Father cites *Sebastian v. Sebastian,* 798 N.E.2d 224, 231 (Ind.Ct.App.2003), where this court held that a father's obligation to pay a child's health insurance expenses was in the nature of child support and terminated when the child turned twenty-one. However, the Indiana Supreme Court abrogated *Sebastian* in *Cubel v. Cubel,* 876 N.E.2d 1117, 1120 (Ind.2007), holding that "a post-secondary educational order may include medical, dental, and optical insurance costs, as well as other health care costs, where the court finds such costs appropriate." Consequently, we find Father's argument that the trial court could not include D.S.'s car, car insurance, car maintenance, cell phone, musical instrument reeds, clothing, gasoline, and food as "other educational expenses" to be unpersuasive. *See, e.g., Howe v. Voninski,* 698 N.E.2d 380, 380–381 (Ind. Ct.App.1998) (holding that the trial court did not abuse its discretion by ordering the father to pay the child's room and board as educational expenses even though the child had turned twenty-one years old and the father's child support obligation had ended), *reh'g denied.*

■ Finally, Father contends that D.S. did not need a vehicle and that the food expenses were duplicated because the trial court also ordered Father to pay a portion of D.S.'s room and board expenses. As for D.S.'s vehicle expenses, evidence was presented that Mother had provided a car to D.S., and D.S. used the car for travel to work at Menard's, travel to Mother's residence and Father's residence, and travel to an elementary school on the west side of Indianapolis for classroom observation requirements. D.S. would also be required to student teach at an undetermined loca-

tion to complete her course work, and she would have to drive to that location. Father presented evidence that D.S. could use public transportation to travel to her work, but presented no evidence that public transportation was available to travel to her parents' residences or to fulfill her classroom observation or student teaching requirements. Consequently, we cannot say that the trial court's award of vehicle expenses as an "other educational expense" was clearly erroneous.

■ As for the food expenses, evidence was presented that D.S. has a five-meal plan at the University of Indianapolis and is responsible for the remainder of her meals. Mother included the five-meal plan as "room and board" and the remainder of D.S.'s food as "other educational expenses." The food expense included as an "other educational expense" was not a duplicate of the room and board expense. Consequently, we cannot say that the trial court's award of food expenses as an "other educational expense" was clearly erroneous.[2]

### III.

■ The next issue is whether the trial court erred when it applied scholarships, grants, and awards to D.S.'s one-third share of educational expense. The trial court ordered that D.S.'s scholarships, grants, and awards be credited against her one-third obligation and that Mother pay 28% and Father pay 72% of the balance of the educational expenses. Father contends that the trial court should have ordered the scholarship and grants to be credited against the total educational ex-

penses with the remainder to be divided between D.S., Mother, and Father.

Ind.Code § 31–16–6–2 provides that an educational support order may also include, where appropriate:

(1) amounts for the child's education in elementary and secondary schools and at post-secondary educational institutions, taking into account:

(A) the child's aptitude and ability;

(B) *the child's reasonable ability to contribute to educational expenses through:*

(i) work;

(ii) obtaining loans; and

(iii) *obtaining other sources of financial aid reasonably available to the child and each parent; and*

(C) the ability of each parent to meet these expenses;

(2) special medical, hospital, or dental expenses necessary to serve the best interests of the child; and

(3) fees mandated under Title IV–D of the federal Social Security Act (42 U.S.C. 651 through 669).

(Emphasis added). The Commentary to the Child Support Guidelines provides:

If the Court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes and overall financial condition of the parents and the child, education gifts, education trust funds, and any other education savings program. *The court should also take into consideration scholarships, grants, student loans, summer and school year employ-*

---

**2.** Father also seems to argue that the trial court could not order him to pay a portion of the "other educational expenses" because those expenses were contemplated by the parties at the time of the 2005 modification. However, we have already held that Mother

was entitled to a modification because she demonstrated "changed circumstances so substantial and continuing as to make the terms unreasonable." *See* Ind.Code § 31–16–8–1(b)(1); *supra* Part I. Thus, we need not address Father's argument.

*ment and other cost-reducing programs available to the student. These latter sources of assistance should be credited to the child's share of the educational expense unless the court determines that it should credit a portion of any scholarships, grants and loans to either or both parents' share(s) of the education expense.*

Ind. Child Support Guideline 6, Commentary (emphasis added).

Thus, under the Commentary to the Guidelines, it was permissible for the trial court to credit D.S.'s scholarships and grants to her share of the educational expense. Having found a substantial change in circumstances warranting a modification of Father's child support and educational expenses, *see supra* Part I, it was within the trial court's discretion to credit the scholarships and grants to D.S.'s share of the educational expenses rather than to Mother and Father's shares. We cannot say that the trial court abused its discretion or that its order is clearly erroneous.

## IV.

 The next issue is whether the trial court erred by denying Father's request to terminate his child support obligation retroactively but granting a retroactive modification of his educational expense obligation. The trial court concluded that Father's $40.00 per week child support obligation would terminate on January 10, 2008, D.S.'s twenty-first birthday. Additionally, the trial court ordered that, retroactive to July 27, 2007, D.S.'s scholarships,

grants, and awards be credited against D.S.'s one-third obligation and that Mother pay 28% and Father pay 72% of the balance of the educational expenses.

 Father argues that the trial court's order resulted in him paying duplicate expenses for D.S. from July 27, 2007 through January 10, 2008. Specifically, Father contends that the retroactive "room and board" expenses duplicate the child support that he had been paying during this time period. According to Father, D.S. was not living with Mother during that time period, and payment of child support to Mother was inappropriate. According to Father, the trial court should have retroactively eliminated his child support on July 27, 2007.[3]

We begin by noting that "[r]etroactive modification of support is erroneous only if the modification purports to relate back to a date earlier than that of the petition to modify." *Carter v. Dayhuff*, 829 N.E.2d 560, 567 (Ind.Ct.App.2005). A "trial court has the discretionary power to make a modification for child support relate back to the date the petition to modify is filed, or any date thereafter." *Id.* at 568. However, Ind.Code § 31–16–6–2(b) provides:

If the court orders support for a child's educational expenses at a postsecondary educational institution under subsection (a), the court shall reduce other child support for that child that:
(1) is duplicated by the educational support order; and
(2) would otherwise be paid to the custodial parent.

---

**3.** A child support order and an educational expense order are separate and distinct. *Knisely v. Forte*, 875 N.E.2d 335, 340 (Ind.Ct. App.2007), *reh'g denied*. In general, a parent has a duty to support his or her child until the child reaches twenty-one years of age, with certain exceptions that are not applicable here. Ind.Code § 31–16–6–6. Thus, Father's child support obligation ended when D.S. turned twenty-one on January 10, 2008.

However, a child's emancipation does not necessarily alter a parent's obligation to pay for college expenses because Ind.Code § 31–16–6–6(a) "permits the continuation of educational expenses beyond emancipation." *Cure v. Cure*, 767 N.E.2d 997, 1002 (Ind.Ct. App.2002). As a result, Father's obligation to pay educational expenses did not terminate when D.S. turned twenty-one.

The Commentary to the Child Support Guidelines provides: "The impact of an award of post-secondary educational expenses is substantial upon the custodial and non-custodial parent and a reduction of the basic child support obligation attributable to the child in question will be required when the child resides on campus or otherwise is not with the custodial parent." Ind. Child Support Guideline 6, Commentary. Thus, the question, as presented by Father, is whether the child support duplicated the retroactive "room and board" expenses.

First, we note that, while Father implies that the "room and board" expense was retroactive, Father was already paying a portion of D.S.'s room and board during this time period under the 2005 agreement. The main difference between the parties' 2005 agreement and the trial court's order was the addition of "other educational expenses" and the change in apportionment of the expenses.

During the time period at issue, D.S. was living on campus. She took courses during summer of 2007 and the fall of 2007. Mother used the forty dollars per week in child support to pay, in part, for D.S.'s clothes, food, gasoline, and musical instrument reeds. These are the same expenses covered by the "other educational expenses" in the trial court's order, not the "room and board" expenses. To the extent Father argues that the child support was duplicated by the retroactive "room and board" expenses, we must disagree. However, to the extent that Father argues the child support was duplicated by the retroactive "other educational expenses," we agree. Father should not be required to pay both child support and the "other educational expenses" during the time period from July 27, 2007 through January 10, 2008. The trial court's order on this issue is clearly erroneous. We reverse that portion of the trial court's order denying Father's request to termi-

nate his child support obligation retroactively to July 27, 2007. Any resulting overpayment by Father shall be credited toward his educational support obligation.

## V.

 The final issue is whether the trial court erred by ordering Father to pay a portion of Mother's attorney fees. Under Ind.Code § 31-16-11-1, in actions for child support, a trial court has broad discretion to impose attorney fees on either party. *Thompson v. Thompson*, 868 N.E.2d 862, 870 (Ind.Ct.App.2007). Reversal is warranted only when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Bower v. Bower*, 697 N.E.2d 110, 115 (Ind.Ct.App.1998). In assessing attorney fees, the court may consider such factors as the resources of the parties, the relative earning ability, and the ability to engage in gainful employment. *Id.* However, the court need not give reasons for its determination. *Id.*

Here, Mother presented evidence that, as of the date of the hearing, she had incurred over $1,500.00 in attorney fees. The trial court ordered Father to pay $750.00 of Mother's attorney fees. According to Father, the award was an abuse of discretion because Mother testified that she was not worried about the attorney fees. Our review of the record reveals that Father's characterization of the testimony is inaccurate. On cross examination, Mother testified that she had received a bill from her attorney but had not yet made payment arrangements. Father's attorney then asked, "So at this point, there's been no payment arrangements, you don't know whether you can make payment arrangements or whether paying Mr. DePrez is even feasible for you, correct?" Transcript at 72. Mother responded that she was "not worried about it" because her attorney had "always been very helpful." *Id.* Mother's answer was

clearly responsive to the payment arrangement question and does not lead to a conclusion that Mother was financially able to pay the attorney fees. Further, we note that Father's income was significantly larger than Mother's income and that Mother's overall financial situation had been adversely impacted by her husband's illness. Under these circumstances, the trial court did not abuse its discretion by ordering Father to pay $750.00 of Mother's attorney fees. *See, e.g., Thompson,* 868 N.E.2d at 870 (holding that the trial court did not abuse its discretion by ordering the father to pay over $4,300.00 in mother's attorney fees given the earning disparity of the parties).

For the foregoing reasons, we affirm in part and reverse in part.

BAKER, C.J., and MATHIAS, J., concur.